JOHN P. McCOLL, ADMINISTRATOR, ETC., V. THE JACKSON
IRON COMPANY.

*Contract—Sale—Account stated.*

1. A contractor agreed to deliver charcoal at 8 cents per bushel,
in boxes to be furnished by the purchaser, and holding 125
bushels each. The purchaser knew the quality of the timber
from which the charcoal was to be manufactured, and that there
was a substantial difference in weight, dependent upon the
kind of wood used in such manufacture. After the contractor
had been operating for three years under the contract, the
purchaser, without his consent, commenced determining the
amount of charcoal delivered by weight. During the three
years the inspector had made deductions for short measure,
braize, and poorly-burned brands, and after said change he
made proper deductions for brands and braize. And it is held
that the method of determining the quantity of coal delivered
was material, and could not be changed without the consent
of the contractor.

2. An offer to pay 8 cents per bushel for all the charcoal a con-
tractor can furnish during an indefinite period is a continuing
offer, accepted as acted upon, and is binding upon the offerer
until withdrawn; citing *Cooper v. Wheel Co.*, 94 Mich. 272.

3. Where a contractor agrees to deliver charcoal at 8 cents per
bushel, and receives credit at that price for a time in the state-
ments of account rendered him, after which the price is
reduced in such statements, and he protests against the reduc-
tion, and is assured that the matter will be adjusted upon the
basis of the original contract, he is not estopped from recover-
ing the full contract price.

4. Where, in order to arrive at the true situation of the account
between the parties, it is necessary to inquire outside of cer-
tain writings, which the defendant claims amount to an
account stated, and on doing so it is found that at the time
the writings were made a controversy existed, which neither
party regarded as settled by the writings, they cannot be held,
as a matter of law, to conclude the plaintiff.


Error to Delta.    (Stone, J.)    Argued November 3, 1893.
Decided January 26, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*F. D. Mead* (*Hayden & Young*, of counsel), for appellant.

*John Power*, for plaintiff.

McGRATH, C. J. Defendant has its home office at Cleveland, Ohio, and in 1884, and subsequently, operated a mine at Negaunee, Marquette county, and a pig-iron furnace at Fayette, Delta county, in this State. Capt. Merry was its general agent, and resided at Negaunee, and his son Harry Merry was superintendent of the furnace at Fayette.

Plaintiff's contention is that in 1884, upon the invitation of Capt. Merry, his intestate, Robert W. McClellan, went to Negaunee, and there entered into a verbal contract with defendant, whereby he was to deliver charcoal at 8 cents per bushel on certain docks, some few miles from Fayette, in boxes furnished by the company, the capacity of which was agreed upon at 125 bushels each; that, under this arrangement, McClellan began the delivery of the charcoal in August, 1884, and continued until August 1, 1888; that, during this period, defendant advanced moneys and supplies to McClellan, and from time to time furnished statements of account, showing both debits and credits; that these statements, until the spring of 1885, credited the charcoal at 8 cents per bushel, but from that time on it was credited, sometimes at 6, again at 6½, at other times at 7, and again at 8 cents; that from the fall of 1887 until August 1, 1888, although the charcoal was delivered in boxes, as formerly, defendant, without McClellan's consent, and against his protest, determined the amount of charcoal by weight, instead of by boxes, as

agreed upon. McClellan brought suit for the difference between the credited and the contract price, and for the difference in quantity as well, and had judgment. Defendant appeals. McClellan died after appeal taken.

Defendant contends that the remark made at the inception of the contract, that the boxes held 125 bushels each, was not an agreement that the quantity should not be ascertained in any other way. The testimony, however, tended to show that such method was agreed upon, and that it was pursued for three years thereafter; that Capt. Merry knew the quality of the timber from which the charcoal was to be made, and that there was a substantial difference in weight, dependent upon the kind of wood used in the manufacture. An inspector was agreed upon, and during the period in which the quantity was determined by boxes he made deductions for short measure, braize, and poorly-burned brands, and during the period when the quantity was determined by weight this same inspector made proper deductions for brands and braize, and plaintiff claimed only for the difference in the averages during the two periods. We think, therefore, that the method of determining the quantity was material, and that the method agreed upon excluded any other method.

It is next claimed that the contract was not mutual, inasmuch as it was an agreement on the part of the company to take what McClellan could furnish, and was therefore not binding. But plaintiff seeks to recover under a contract so far executed. The contract was indefinite only as to time and quantity to be delivered under it, but that which was to be delivered, and the price, were definitely agreed upon; and defendant's offer to pay the price, without notice to the contrary, must be regarded as a continuing offer, accepted as acted upon, and binding upon it. *Cooper v. Wheel Co.*, 94 Mich. 272.

It is next insisted that the rendition of statements of account at intervals, during a period of four years, showing a balance in favor of defendant, estopped plaintiff. This would have been true, if McClellan had made no objection, but the testimony tended to show that he did not acquiesce, but repeatedly protested, and was assured that the matter would be adjusted upon the basis of the original contract. McClellan testified that he called the attention of Capt. Merry to the matter, who told him that he would inform Harry that the price was to be 8 cents; and that on other occasions he complained to Harry, who assured him that the mistakes would be rectified. Much stress is laid upon a statement made by McClellan that at one time Harry told him that he had to make a good showing to the people at Cleveland, and it is urged that McClellan was a party to an attempt to deceive the company. McClellan was not, however, responsible for what representations had so far been made to defendant. The fair inference from his testimony is that this remark was made at a time when he first discovered the change in the price at which the coal was credited; that at that time he had just received three or four monthly statements, in one batch; that he was there to protest against the price credited, and, upon being assured that the matter would be rectified, he left the statements thus far received with the book-keeper for the very purpose of having them corrected. All parties conceded that the original agreement was 8 cents, and McClellan's testimony tended to rebut an inference that he was colluding with the agent to deceive the principal, or any presumption of acquiescence on his part, or that defendant had concluded to withdraw its offer of 8 cents.

The final contention is that McClellan was precluded by the concessions made in a subsequent contract and mortgage from claiming that in the whole business ending November 30, 1888, he was not indebted to defendant

in the sum of $4,251.60. It appears that the parties continued their dealings after August 1, 1888. By stipulation at the trial, it was agreed that on December 1, 1888, the balance of account between the parties, resulting from their dealings up to that date, was the sum of $4,251.60 in favor of defendant; but, by the same stipulation, plaintiff reserved the right to make the claims which he presented at the trial. The stipulation concludes as follows:

"The above-mentioned balance of $4,251.60, which the defendant contends for in this action, comprises all that defendant claims in this suit; all subsequent charges, after December 1, 1888, to plaintiff, being otherwise provided for."

An agreement was entered into between the same parties, dated April 1, 1889, by the terms of which it was agreed that McClellan should manufacture charcoal "from wood now on the bank at the kilns;" that the defendant should advance certain sums to McClellan as the wood was hauled, piled, and measured at the kilns, which advances should be deducted from the monthly payments; that an additional amount per bushel should be deducted, to be applied on an indebtedness existing and due for advances made on said wood, amounting to $6,382.25. This contract contains this further provision:

"It is mutually agreed that the security in this agreement shall not be construed to secure any indebtedness except that above mentioned for advances made since the first day of December, 1888."

On the same date, McClellan executed a chattel mortgage to defendant, which recites that being indebted to defendant in the sum of $6,382.25, "being amount advanced on wood now on the bank at kiln, and not representing total indebtedness" of said McClellan to said company, etc.

It is very clear from this contract and chattel mortgage that the parties intended to keep separate and distinct two items of account, viz., the disputed account, of $4,251.60, for advances made prior to December 1, 1888, and the item of $6,382.25, for advances made subsequent to that date; and they evidently sought to avoid, in that agreement and mortgage, an existing controversy concerning the first item. Defendant had been claiming the first-named sum as advances, and as a balance due to it upon the former contract; and McClellan, while admitting the advances, had been insisting upon a counter-claim under the same contract which would wipe out the balance as per statement, and turn the scales in his favor. The accounts rendered had been disputed, and there is no pretense either that the controversy here involved arose afterwards, or that the new contract was regarded by either party as a settlement of the old matter. Nor was defendant misled. While the language of these instruments was proper for the consideration of the jury, it did not, standing alone, as a matter of law, conclude plaintiff. Although the contract and mortgage refer to "any indebtedness" for advances made prior to December 1, 1888, and to a "total indebtedness," neither specifies the amount of said advances or of the total indebtedness. If an indebtedness be conceded, what indebtedness? The elements of an account stated are not present. It was necessary to go elsewhere to get at the situation of the account between the parties, and, having done so, it is found that at the time a controversy existed, which neither party regarded as having been settled by the writings in question; that a change had been made in the administration of the company's affairs; that the object of the new contract was to avoid further disputes, and in framing it the parties desired to avoid existing disputes, rather than to settle them.

The court was requested to instruct the jury that the plaintiff was barred by the acknowledgments in the contract and mortgage, but the court refused the request, but instructed the jury that—

"If the plaintiff, as late as the 1st of April, 1889, entered into a new contract with defendant, by which they agreed that the plaintiff was then owing the defendant a certain sum on account of that old deal and indebtedness, it would be a statement of the account between them. It would be such a recognition of that old indebtedness as in justice and in law ought to preclude the plaintiff from claiming anything in this suit.   *   *   *  . You may look at that contract in connection with the chattel mortgage, and say whether there is any of this old indebtedness carried forward into this matter, or any recognition of the indebtedness. I should doubt that the expression that 'this was intended not to include any other indebtedness.' would be such a solemn admission as ought to bind the defendant here. It would look as though there was a guarding of that point, but you will look at all the testimony bearing upon the accounts."

The court did not exclude the statements contained in the contract and mortgage from the consideration of the jury, but, undoubtedly referring to defendant's request, instructed them that the statements referred to, standing alone, would not, as a matter of law, preclude a recovery. What was said to the jury upon that subject must be considered as a whole, and, when so treated, it is not evident that the jury could have understood that they were to disregard the statements referred to.

The judgment is therefore affirmed.

The other Justices concurred.